Good morning, Your Honors. May it please the Court, my name is Deborah Di Iorio, and I represent Mr. Diaz-Rodriguez in this case. I'd like to focus the majority of my argument on the first argument, which is the 1326d challenge, and I would like to focus on the problems that flowed from the original 1998 deportation, which I am alleging and the government is arguing is flawed. That erroneous deportation was followed by another flawed deportation which occurred in 1999. We don't have a record of that deportation hearing, although it was before an immigration judge, because the tape was somehow destroyed. What we do know is that- There were two July 1999 deportation proceedings, one on the 3rd and one on the 1st, right? Weren't there? Which one are you talking about? I'm talking about the one on July 1st, 1999, which was in front of an immigration judge. You know, that part of the record is a little confusing. I have the same question as Judge Baya. Was the proceeding the first and the deportation on the fourth or- No, so what happened was in 1998, there was the quick deportation hearing. In 1999, there was a deportation hearing on July 1st, 1999, in front of an immigration judge. We don't have a record of that hearing. That's the part we do understand. He came back three days later, didn't he? He came back three days later, but when he came back, it was reinstated. Yeah. Okay. So the reason that I'm focusing on the July 1st, 1999 proceeding is that is the proceeding that was reinstated so many times down the line, as the government refers to in their brief. And in that proceeding, what we know is that immigration and the judge were aware that he was erroneously deported in 1998. We know that from several things. One, the same agent, Agent Andrew Flood, did the 1999 July 1st hearing, and he also helped fill out the paperwork in 1998. Those are contained in the excerpt of records from the government. Page 12 of the excerpt of record, it has Andrew Flood in the 1999 proceeding filling out the paperwork in 1998, and we know that because he did a declaration that's at the end of the government's excerpt of record, pages 45 to 46. But pardon me, in 1998, there was a mistake. He was a legal permanent resident, and he was being deported because he said that he had come in in 1994 without inspection or parole. Yeah. But in 1999, the grounds for deportation were not that, a prior deportation, but that he falsely claimed to be a United States citizen. Actually, that was the July 4th, 1999, proceeding. And I know it's confusing. On the July 1st, 1999, proceeding, it was not because of a false representation. I'm having trouble finding what's wrong with the July 1st, 1999 removal. Okay. He had a hearing before a judge. The main problem with that is that there is no indication in the record that the immigration judge was informed that he had previously been deported despite the fact that he was non-deportable. There is no indication anywhere. What's the import of that? The import of that was he was not an aggravated felon at that time. And he was erroneously deported. He had a green card. So the problem is he was not a non-deportable. But that all happened because he used a false name and didn't tell them, right? That's in debate. It seems like it would have had to be clairvoyant. Well, that's something that's in debate. There are competing affidavits that are in the record. Mr. Diaz-Rodriguez filed an affidavit in which he stated that immigration, Andrew Flood, came to him with a pre-filled out questionnaire where he just checked off the boxes. That's in the excerpt of record. And you can tell from the handwriting that that's the case. And that they told him, if you want to get out of jail today, sign here. You'll go back to Mexico. But he had to have given his name. He did give his name. His name is Anibal. He said in his declaration he always went by the name Joey. He came to the United States at a very young age. I think that we could understand why somebody would go by the name Joey instead of Anibal. He gave his true name. He gave his address. And in the declaration, he stated that he believed that immigration knew exactly who he was because he'd had an immigration card on file. He knew his fingerprints had been taken.  He gave his true date of birth. And so in the declaration, he never says, yeah, I gave him a false name. And, in fact, it's nonsensical. He had no reason to do any of that. He was not deportable as charged. He never should have even been in deportation proceedings. And he had a valid greed card. It's not totally nonsensical. He could have given a different name so that his criminal record would not go to his right name. His criminal record did not matter. It didn't render him. Well, if he'd had a law degree, he might have known that. But we don't know what he knew. And a reasonable interpretation of the record, I think, as Judge Beo's point, is that he gave a false name to protect his LPR status. That is certainly a possible explanation. But, again, I would point out that the contrary is also reasonable. And the burden of proof in those proceedings is on the government, is on the INS. The burden of proof is on them. They had his identity. They had his fingerprints from jail. They had his date of birth. They had everything. And he was not a deportable alien. He had a valid greed card. And they chose to do a quick deportation. In 1998. In 1998. So getting back to Judge Silverman's question, what's your strongest argument that the 1999 proceeding was false? My strongest argument is that everybody knew in 1999 that there had been a problem in 1998, and absolutely nothing was done to either bring it to the attention of the immigration judge or to bring it to the attention of Mr. Diaz-Rodriguez. I'm having a hard time with the premise that everybody knew because the 1998 paperwork is under a different name. What am I missing? You're missing the I-213, and I'll find the record site for you, in which Agent Flood mentions the prior flawed proceeding, the prior different A number, and the prior deportation. As of when did he know that? He knew that prior to the IJs. He knew that right when he arrested him, when he came back over the border. And let me find those sites so I can give you the dates without making it. Since he was deported six times, it doesn't help me when you say right when he knew that, you know, right when he came over the border. Are you speaking now of July 1, 1999? Yes. I'm sorry. I'll refer to them as July 1 and July 4 since I know the proceeding. Thank you. On the July 1, 1999 proceeding, which is the only other time he saw an immigration judge, on that date immigration was aware of the problem with the 1998 proceeding. What should the judge have said to him on July 1? I believe the judge should have said you were deported in 1998 based on the fact that you did not have proper immigration documents. We see you did. And the reason they didn't think he had proper documents is because he told them he didn't have documents. So this is a situation of his creation. Let's assume for purposes of the discussion that you're correct. Although I would point out there is a discrepancy. That was disputed below. It was disputed. My client said that he filled out, he checked off paperwork that had already been filled out, that he was approached in jail by an immigration agent who asked him, when's the last time you were inspected, and that that term of art meant nothing to him. He said he came in in 1994. Let's assume that factual point was resolved against him. Okay. I believe that he should have, that the immigration judge, there's no indication that the immigration judge was told. And we don't have the record of that. So we don't know. But there's no indication that the immigration judge knew that he had been deported as an LPR. And if he did know, there's no indication that he told Mr. Diaz Rodriguez, there was an issue with your 1998 deportation. You were deported, however we want to phrase it, you were deported erroneously. We thought you didn't have a green card. Now we know you did. Okay. So that would make the previous deportation invalid. But he could have reopened those proceedings, Your Honor. Well, doesn't, hasn't the time expired to reopen? The time expires, but that time is tollable if there is an error. And my client didn't even have the opportunity to file something saying. 90 days to bring an error to the attention. Right. But that time. Well over a year. But the time can be told. The time can be told. And had my client been told that there was a problem. Why would it be told? This guy keeps coming back illegally. I mean, why would anybody be inclined to give him equitable tolling? Sorry. This is only the second. This is the first time he came back illegally. This July 1, 1999 proceeding is the first time. Okay. So what? Why would he get equitable tolling? So presume he's told there was a problem. And he says, I want to file a motion to reopen because I was not deportable as charged. In fact, I was not deportable at all. The service is perfectly capable of saying, well, you're out of luck. The time has told. But he also has the right to file a motion saying, here's why I filed it late. I didn't know. Until today, I didn't know. And those motions are filed in immigration proceedings all the time, motions to reopen. Let me make sure I'm clear on this. Your whole argument rises and falls on whether the judge should have said something different on July 1, 1999. My whole argument rises and falls on whether or not he was properly deported in 1998 and whether he was eligible for relief. I just have to show that he was plodding. We all stipulate he was not properly deported in 1998. Right. July 1, 1999, he appears to have been correctly deported, except you say the judge should have said something different than what he said. I do, because. And if you're right about that, I guess you're right about that. If you're wrong, you lose. Is that it? If I'm wrong about the 1999 one, I do lose. Okay. That's what I wanted to make sure I understand. I do. Okay. And then I only have 28 seconds, so I'll save my 28 seconds. Okay. Thank you, Your Honors. Thanks. You're actually over time, but we'll give you a minute on your buck. Thank you. Thank you. Appreciate it. Good morning. Good morning. May it please the Court. Benjamin Hawley for the United States. Beginning with that 1998 proceeding in terms of the affirmative misrepresentations that Mr. Diaz made, as counsel indicates, it was somewhat disputed in the record about who was writing what. However, in the recording of the 1998 proceeding, which we do have, Mr. Diaz was making oral misrepresentations directly to the immigration judge, not only about his name, but about whether he had any family in the United States. At that time, he said he had none. He also said he had only been living in the United States for the last four years and had no job. So could I stop you there? Forgive me for interrupting. There's a representation, and I didn't get the question at the time opposing counsel was at the podium, but he also said he came in the country in 1994. Correct. But he'd come into the country when he was two years old? Exactly. Became a Laughlin resident in 89. Yes? The actual fact is that he came in when he was very young, when he was two years old. Right. What he told the immigration judge is that he'd only been here for four years, which would have been 1994. Did he tell him that or did he tell him that he came in in 1994? He told them he said he'd been here for four years. The allegation in the notice to appear was that he had entered in 1994 four years prior, so that was consistent with the charges that the INS had brought. Did he say that in response to the question about when were you last inspected? I believe the question I would have to review to get the exact question, but I believe it was how long have you been in the United States. At that point in the proceedings, the immigration judge was seeing a voluntary departure was a viable option. That's why he was asking about do you have any family that live here, how long have you been here. Is there anywhere in the record where he refers to Joey as being a nickname or otherwise gives his full given name? Not that I'm aware of. He uses various names. Either Joey Rodriguez was for the vehicle theft conviction. That was the name there. Then in 98, Joey Diaz Rodriguez, and then by the time we get to July 1st of 99 is Annabelle Diaz Rodriguez. Okay. But in 98, where I think several of us, I think all three judges have asked questions about the representations made in 98, did he ever give his correct name? No. It was always at that time either Joey Diaz or Joey Diaz Rodriguez. Thank you. Annabelle Diaz was not mentioned. You heard counsel say that this whole case turns on the validity of the July 199 removal, and she says that the judge didn't advise Mr. Diaz Rodriguez of things he should have advised him of. What's your answer to that? Two answers to that. The first is that the immigration judge in 1999 had no obligation to inform him of what the government contends would be a futile motion to reopen. It was not proper. It was time-barred, and because of these affirmative misrepresentations, there's no equitable tolling or equitable situation. Second, even if that 1999 hearing were also somehow invalidated, the government was also relying on the both 1999 and 2001 expedited removals. That July 4th, 1999, was an expedited removal, as was one in 2001. Those were based on his coming to the border and saying he was a United States citizen, which was not true and never was true. So those were factually and legally entirely independent of anything that happened in either I.J. hearing in either 1998 or 1999. Just to be clear, you're not contesting that he was improperly removed in 1998? Based on what we know now, that he should not have been removed. That's correct. Okay. Opposing counsel also said that on July 1, 1999, that everybody knew, I think was your phrase, everybody knew that the earlier removal had been improper. Is that correct? What we do know is that by that time, the two different A files, the one that he was originally deported under in 1998 and a new one created under his correct name, had been merged. So it would appear that the prior documentation from 1998 would have been in that file in 1999. Literally merged? They would have had it? There were two separate files. They were combined. The A numbers were combined. I don't know the procedures at that time, but I would assume the physical paper would have moved as well. And that merging happened when he gave his correct name the second time around. Is that right? Prior to those proceedings in 1999, correct. Thank you. Unless the Court has any other questions. I have one. Kristen, anything else? No, nothing. Thank you. Thank you. Thank you very much, Mr. Holland. Ms. Durian, back to you. Thank you, Your Honor. I just wanted to point out that in government's, in response to Judge Kristen's question, the paperwork that he's referring to is in the excerpt of record, the government's excerpt of record at page 12 of 46. Yes. Thank you. But I would contest the representation that it was made because he gave his true name. It was made because the, because of the fingerprints. The fingerprints went back to both A files. So, again, my question really went to, I mean, I've read everything, and I'm familiar that they had been merged. My question is, you know, so as of when? As of when did they have the documentation together? Because when you were at the podium the first time, you said everybody knew. Right. It sounds like it's uncontested that they did as of that date. Right. And I just wanted to point out that that, when I said everybody knew, that occurred prior to the IJ's decision in 99. Got it. Thank you. Thank you, both counsel. The case just argued is submitted. Good morning.
judges: Silverman, Bea, Christen